UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:14-MJ-060PAS |
| | : | |
| ALFREDO BALESTIER-SANCHES | : | |

**MEMORANDUM AND ORDER**

Defendant Alfredo Balestier-Sanches is charged by a criminal complaint with five counts of distributing fentanyl and heroin based on three controlled buys by a confidential informant, as well as possession with intent to distribute fentanyl based on a search of his Woonsocket apartment, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). On March 10, 2014, Defendant appeared before this Court for a preliminary hearing pursuant to Fed. R. Crim. P. 5.1, represented by appointed counsel. At the conclusion of the hearing, I took the issue of probable cause under advisement. For the reasons stated below, I now find that the government has established probable cause to believe that the offenses were committed and that Defendant committed them pursuant to Fed. R. Crim. P. 5.1(e).

**Discussion**

A. **Preliminary Hearing Standards**

The government's burden to establish probable cause at this preliminary stage is low. A preliminary hearing under Fed. R. Crim. P. 5.1 is narrow in scope. Its purpose is solely to test whether probable cause exists as to the offense charged. It is not a discovery mechanism for defendants, and is not a trial to determine guilt or innocence. Although mere suspicion does not suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the offense charged. United States v. Mims, 812

F.2d 1068, 1072 (8th Cir. 1987) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)); see United States v. Gomez, No. 12-1372, slip op. at 13 (1st Cir. May 3, 2013).  As the Supreme Court has counselled, probable cause is a "fluid concept," turning on the evaluation of evidence in a "nontechnical, common-sense manner."  Gates, 462 U.S. at 232, 235-36.  Both circumstantial evidence and the reasonable inferences drawn from it can support a finding of probable cause.  United States v. Swope, 542 F.3d 609, 616 (8th Cir. 2008); United States v. Hilario, CR No. 1:09-M-167A, 2009 WL 2913957, at *1 (D.R.I. Sept. 9, 2009).  With the exception of the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings.  Fed. R. Evid. 1101(d)(3).  As a result, the probable cause finding may be based, in whole or in part, on hearsay evidence.  Evidence at the preliminary hearing is not subject to objection on grounds that it was unlawfully acquired.  Fed. R. Crim. P. 5.1(e).

    B. **Probable Cause**

    To establish probable cause in this case, the government relied upon the sworn affidavit of Detective Kevin L'Heureux, a member of the Woonsocket Police Department and a Drug Enforcement Administration Task Force Officer, who also testified at the hearing.  The evidence presented established that Defendant was the target of an ongoing investigation of the distribution of heroin and fentanyl in Woonsocket, Rhode Island.  In connection with that investigation, during February 2014, law enforcement used a confidential informant ("CI") to make "controlled" purchases of illegal narcotics from Defendant.

    Each of the three narcotics transactions was initiated by a telephone call placed by the CI to either a mobile phone or a landline phone.  In each instance, law enforcement recorded the telephone conversation to arrange for the purchase of narcotics between the CI and an individual identified by the CI as Defendant.  While Detective L'Heureux was able to testify to having

heard only a portion of one of the recordings of these telephone conversations, his affidavit establishes through hearsay that, in two of the three conversations, there was reference to the purchase of "the good stuff." Following each of the calls setting up the transactions, surveillance units were located both in a position to observe the Woonsocket apartment linked to Defendant by evidence described below, as well as at the location where the seller of the narcotics and the CI planned to meet for purposes of completing the transaction. Prior to each transaction, the CI was searched to confirm that he carried no narcotics and was provided with government funds. In each instance, Defendant was observed by law enforcement leaving the Woonsocket apartment in a black Lexus and driving to the meet location.

For the first transaction, surveillance watched the CI and Defendant enter a building, after which surveilling officers could not see what occurred. Both the CI and Defendant exited the building and parted, Defendant leaving in the black Lexus, while the CI returned to detectives and produced a plastic baggie later confirmed to contain .3 grams of fentanyl. The CI was searched again after exiting the building and no contraband was found. For the second and third transactions, surveillance units waiting at the meet location observed Defendant engage in a hand-to-hand transaction with the CI. For the second transaction, the CI returned from the observed transaction with a bag containing what was later confirmed to be 2.4 grams of a mixture of fentanyl and heroin. For the third transaction, the CI left the observed transaction with a bag subsequently confirmed to contain .6 grams of fentanyl. After both the second and third transactions, the CI was searched after he returned from the hand-to-hand transaction and no contraband was found.

The final link in the chain of proof was precipitated by a search warrant for the Woonsocket apartment that Detective L'Heureux and other members of law enforcement had

observed Defendant leaving prior to each narcotics transaction. On March 4, 2014, when the warrant was executed, Defendant and a woman named Isabel J. Aviles Pagan were both in the Woonsocket apartment. A records check established that Ms. Pagan is the registered owner of the Lexus observed being driven by Defendant between the Woonsocket apartment and the location of each of the narcotics transactions. Confirmation that Defendant was residing in the Woonsocket apartment was obtained from the Woonsocket Police Department, where a complaint of a no-contact order violation had been made the day before the search – it identified Defendant and Pagan as both residing there. During the search, detectives found four baggies containing narcotics, two with a small amount of a fentanyl/heroin mixture (subsequent testing confirmed that there was .5 grams of fentanyl and .5 grams of heroin),[1] and two with cocaine, in addition to a digital scale, baggies, an identification card for Defendant, as well as a man's clothing. During the search, Detective L'Heureux was able to confirm that the landline phone called by the CI to set up two of the three transactions rings in the Woonsocket apartment and that the mobile phone found in the apartment is the one called by the CI to set up the third transaction. Finally, Detective L'Heureux confirmed that Defendant is the person he saw leaving the Woonsocket apartment to travel to the location of the narcotics transactions, while the CI confirmed that Defendant is the person from whom he purchased the narcotics that he brought to law enforcement after each of the "controlled" buys.

Defendant challenges the government's probable cause presentation based on the lack of evidence to establish the CI's reliability. At first blush, this challenge seems well founded –

---

[1] The government concedes that this quantity in isolation is not sufficient to support the charge of possession with intent to distribute the narcotics found in the Woonsocket apartment. The government counters that all of the other facts, including the pattern of sales of fentanyl and heroin, two of which were set up by calls to the landline in the Woonsocket apartment, all three of which were preceded by the observation of Defendant leaving the Woonsocket apartment to go to the place of each transaction, as well as a limited amount of what could be trafficking paraphernalia (the digital scale and baggies) found during the search, viewed in their totality is sufficient to establish probable cause for Count 5 of the criminal complaint. I agree.

beyond the unadorned fact that "the CI has never provided information proven to be false," Detective L'Heureux was unable to provide any information regarding prior experience with the informant. While courts have recognized that an affidavit with the averment that the informant never provided false information is a useful step towards establishing the reliability, it is insufficient when the only information provided is related to the transaction at issue. See United States v. Torres-Rosario, 588 F. Supp. 2d 128, 132 (1st Cir. 2008) (sworn statement that CI never provided false information would go far to establish reliability, but at least one prior instance of providing information to police critical to finding of reliability). Indeed, Detective L'Heureux's evidence establishes that the only information provided by this CI is his claim that it was Defendant who sold him heroin and fentanyl. To aver that this CI has never provided false information when that is the only information he has ever provided adds nothing useful to the probable cause calculus.

With no history to establish the reliability of this CI, this Court should focus on the other evidence presented – probable cause cannot rest merely on the CI's statement to law enforcement that Defendant was the person on the other side of each of the transactions. See Gates, 462 U.S. at 226 (when anonymous letter lacks indicia of reliability, more is required for finding of probable cause). In stripping away the CI's statement to examine what remains, it is significant that the other evidence consists of the observations of law enforcement, which are considered reliable without any additional showing. United States v. Ventresca, 380 U.S. 102, 110-11 (1965) (observations of officers engaged in common investigation are plainly reliable basis for probable cause finding).

The evidence against Defendant derived solely from the observations of law enforcement weaves a cloth that is more than sufficient to establish probable cause. Defendant's movements

from the Woonsocket apartment to the transaction site were tracked by surveillance units who made their own observations, in two of the three instances surveillance units observed Defendant participate in a hand-to-hand transaction, officers controlled the CI by a search to establish that s/he had no narcotics just prior to and after each transaction, and police monitored the telephone conversations setting up each transaction.  This quantum of proof is more than sufficient for a finding of probable cause despite the informant's lack of reliability.  United States v. Tiem Trinh, 665 F.3d 1, 11-12 (1st Cir. 2011); see also United States v. Gifford, 727 F.3d 92, 100-01 (1st Cir. 2013) (when there is little police information to corroborate unreliable tip, no probable cause). The small amount of fentanyl and heroin, the digital scale and the baggies found at the Woonsocket apartment enhance this evidence.  Further, the verification of the informant's information by the observations of law enforcement clothes this CI with at least a minimal degree of reliability, so the CI's statements should not be completely disregarded.  United States v. Dixon, 861 F. Supp. 2d 2, 7-8 (D. Mass. 2012) (verification of information from informant serves to corroborate initial tip); United States v. Torres-Rosario, 588 F. Supp. 2d 128, 132 (D. Mass. 2008) (police corroboration of informant's information lend further support to finding of probable cause).

     To conclude, despite a CI whose reliability was not established by a history of providing accurate information, based on the totality of the circumstances, the Court finds that the government has met its burden of establishing probable cause that Defendant committed the offenses charged in the criminal complaint.  See United States v. Fontalvo, CR No. 1:08-M-0069A, 2008 WL 1994817, at *1 (D.R.I. May 5, 2008).

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 13, 2014